PARIENTE, J.,
concurring in part and dissenting in part.
I agree with the entirety of the majority’s opinion with two exceptions that I write to explain. I also discuss the amendments to rule 1-12.1 addressing the publication of Bar rule amendments, which are the subject of Chief Justice Canady’s separate dissent. First, I disagree with the majority’s rejection of proposed rule 1-3.12, Provision of Legal Services Following Determination of Major Disaster. This rule would apply only to allow temporary pro bono practice in Florida following a major disaster. The rule gives authority to the Florida Supreme Court to determine when an emergency or natural disas *810 ter has had an impact on the justice system, so this Court makes the threshold determination of whether there is even a need for out-of-state pro bono legal services assistance. As an additional safeguard, the rule provides that the provision of legal services must be undertaken through, and supervised by, a pro bono or legal services program or not-for-profit bar association. Although the majority states it has “concerns” about how the rule would apply, majority op. at 3, it does not articulate those concerns or give the Bar an opportunity to address the rule. I would adopt the proposed rule.
My second point of disagreement is with the majority’s rejection of the proposed amendment to rule 5-1.2 (Trust Accounting Records and Procedures) requiring that a lawyer actually sign his or her own trust account checks rather than using a signature stamp or allowing nonlawyer employees to sign checks. The Bar explains that these amendments will help protect the public from costly mistakes and from misappropriation of trust funds caused by careless or improper practices. I certainly understand the concerns raised by solo practitioners, but in my view, the need to protect the public outweighs those concerns. Although we certainly see far too many instances of lawyers stealing from their trust accounts, I believe this additional protection is one that is reasonable and in furtherance of our goal of protecting the public. For that reason, I would adopt the proposed amendment to rule 5-1.2 along with the other amendments to the rule.
Lastly, I address the Bar’s proposed amendment to rule 1-12.1, which this Court rejects. The proposed amendment would apply only to the process by which the Bar amends its rules and would allow notice of all of the Bar rule amendments on its website in lieu of publication in The Florida Bar News. The rule amendment adopted by the majority opinion requires publication in both places. Currently, the Bar’s petitions to amend rules, along with the full text of amendments, are published on the Court’s website at the time the motion to amend is filed, so it does seem that there is no reason for the full text of the proposed amendments to also appear in The Florida Bar News.
Although I understand the Bar’s position that filing rule amendments in The Florida Bar News creates printer deadline problems and cumbersome space requirements, the problem is that members of the Bar would not be on notice that Bar rule amendments are being made. A possible solution to the space requirement could be to allow the Bar to publish an abbreviated notice and summary and then refer interested parties to both the Bar’s website and the Court’s website. Further, since currently all of the Bar’s rules committees are required to publish their proposals in The Florida Bar News as well as on the Bar’s website, there would be an inconsistency in how the rule amendments are handled with the potential for further confusion. See Fla. R. Jud. Admin. 2.140(b)(2). I encourage the Bar to look at this issue again, in conjunction with procedures for other rule amendments, and consider an alternative proposal that would address the issue of notice but also allow for increased use of the internet.
Accordingly, for the reasons stated above, I concur in part and dissent in part.